**UNITED STATES of America**

v.

**NEW JERSEY MANUFACTURERS COMPANY.**

Civ. A. No. 83–5336.

United States District Court, E.D. Pennsylvania.

April 27, 1984.

Joan K. Garner, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Albert S. Shaw, Jr., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM AND OPINION

KATZ, District Judge.

These cross motions for summary judgment raise the issue whether a driver of a vehicle was acting within the scope of his employment for the plaintiff, United States, at the time of an accident on November 8, 1979. If the driver was within the scope of his employment, he will be represented by plaintiff, United States, in a separate personal injury suit arising out of the accident; otherwise, he will be represented by the defendant insurance company.[1] This is a declaratory judgment action. The facts are stipulated.

The accident happened at 7:00 a.m. at the military base where the driver, Silver, was employed as a draftsman. Mr. Silver had just dropped off fellow employees in his car pool and was proceeding to an exit to go to a doctor's appointment when he struck a pedestrian, Ms. Mileti. Mr. Silver intended to return to the base to start work at 9:00 a.m. after his doctor's appointment. Silver's work day usually started between 7:00 and 7:15 a.m., except for the day of his monthly doctor's appointments, when he started at 9:00 a.m. Silver's sole reason for being at the base just before the accident was to drop off car pool riders before going to his doctor's appointment.

Participation in a car pool was not a duty of Silver's employment, but was rather a voluntary activity. The government did not pay him or provide a vehicle for the car pool. (Mr. Silver was driving his own car when he had the accident.) The government did encourage car pools at the time of the accident as an energy saving device by providing designated parking spaces closer to the worker's building and by circulating bulletins that identified employees interested in forming car pools. The personal advertisements for car pools in these bulletins included Mr. Silver's ad to obtain riders.

---

1. The claim against the driver in *Mileti v. Silver,* Civil Action No. 81–4339, which is pending before the Court would be barred if the driver was acting within the scope of his employment for the United States, since both Mileti and Silver were federal employees at all relevant times. 5 U.S.C. § 8101 et seq.

■ Whether Mr. Silver was within the scope of his employment at the time of his accident turns on whether, under Pennsylvania law, his conduct was incidental to his employment, i.e., whether he was performing acts of the type he was employed to perform and was actuated, at least in part, by a purpose to serve the employer. Under Pennsylvania law, an employee's use of his own private vehicle must be necessary and important to the employer's business before the trip is considered in the scope of employment. *Cesare v. Cole,* 418 Pa. 173, 210 A.2d 491 (1965). For example, an army private commuting to his duty station is not within the scope of his employment. *Wilson v. U.S.,* 315 F.Supp. 1197 (E.D.Pa. 1970). On the other hand, a marine recruiter giving rides to three young people he considered valuable contacts for recruiting was acting within the scope of his employment. *Simpson v. U.S.,* 484 F.Supp. 387 (W.D.Pa.1980).

■ The use of an employee's car for personal errands, even with the employer's permission, does not make out a case under Pennsylvania law that an employee was within the scope of his employment. *Shuman Estate v. Weber,* 276 Pa.Super. 209, 419 A.2d 169 (1980). The notion is that subjecting an employer to liability for personal trips of the employee is unjust because accidents on such trips should not be considered a normal risk of the employer's business. Of course, if the trip for the personal errand is combined with some additional purpose which serves the employer's interests, the employee is within the scope of his employment. *Kemerer v. U.S.,* 330 F.Supp. 731 (W.D.Pa.1971), *aff'd* 474 F.2d 1338 (3d Cir.1973) (where the employee's trip during which the accident happened was not only for the purpose of a personal errand, but also to travel to the post office to mail a letter complaining about hotel charges incurred while attending a convention on business, the employee was pursuing his employer's interests by the trip to mail the letter).

■ Applying these principles to the present case, Silver's trip to his doctor during which the accident took place was a personal errand, not within the scope of his employment for the United States. Even assuming, *arguendo,* that the car pool advanced the employer's interests, that aspect of the trip was over when he was proceeding to a personal doctor's appointment at the time of the accident. The trip to the doctor cannot be said to be the kind of activity Mr. Silver was employed to perform, nor was his trip to the doctor partially actuated by a purpose to serve the employer. Even if the accident happened during the car pooling trip itself, the stipulated facts indicate that the car pooling was a voluntary, personal effort by the employees. Although the government encourages car pooling, it is not an activity that serves the interests of the United States *qua* employer, but rather serves the broader public interest in conserving energy.

For these reasons, the Court finds that Silver was not within the scope of his employment for the United States at the time of the accident of November 8, 1979.